UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCIS W. DAVIS, | CASE NO. 1:06-cv-1062-AWI-GSA (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| CALIFORNIA DEPARTMENT OF CORRECTIONS, CORRECTIONAL OFFICER PETERSON, et al., | (Doc. 53) |
| Defendants. / | |

I.  **Defendants' Motion for Summary Judgment**

   A.  **Procedural History**

Plaintiff Francis W. Davis ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on Plaintiff's amended complaint, filed November 16, 2006, against Defendants Peterson and Valles ("Defendants") for retaliation and denial of equal protection.[1]  On January 5, 2009, Defendants filed a motion for summary judgment. (Docs. 53, 54.)  Plaintiff filed an opposition on January 28, 2009. (Docs. 56, 57, 58.)  Defendants filed a reply on February 11, 2009. (Doc. 61.)

///

---

[1] On April 10, 2007, Plaintiff's Eighth Amendment and due process claims were dismissed from this action for failure to state a claim. (Doc. 15.)

1

B.  **Legal Standard**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable

///

jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

///
///
///

C.     **Undisputed Facts**[2]

1. Plaintiff filed his First Amended Complaint on November 16, 2006, alleging that Defendants Peterson and Valles, both correctional officers employed by the California Department of Corrections and Rehabilitation ("CDCR"), retaliated against him in violation of the First Amendment because of a suit Plaintiff filed against two other correctional officers not involved in this action. Plaintiff also alleged that Defendants Peterson and Valles violated his Fourteenth Amendment right to equal protection.

2. Plaintiff has been confined at California Substance Abuse and Treatment Facility since June 20, 2003.

3. Plaintiff is a general population inmate and has A1/A work and privilege group status, which allows him to participate in yard and dayroom unless he is receiving a prison consequence.

4. Plaintiff had an inmate work assignment in the scullery, or kitchen, for about fourteen months, beginning in October 2004.

5. Plaintiff's typical working hours were from approximately 7:00 a.m. until 1:30 p.m. - 2:00 p.m.

6. Plaintiff generally missed morning yard time/dayroom because of his inmate work assignment in the scullery. However, because of Plaintiff's A1/A status, after his working hours, he was able to attend yard or dayroom which was held from 1:00 p.m. - 4:00 p.m., and then again from 7:00 p.m. - 9:00 p.m.

7. Although Plaintiff was not involved in prison handicrafts, he made numerous statues in his cell utilizing a combination of discarded bread, toilet paper from his cell, and water that

---

[2] "Any party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those facts that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial." E.D. Local R. 56-260(b). In this instance, Plaintiff did not comply with the local rule. Therefore, Defendants' Statement of Undisputed Facts is accepted as true except where brought into dispute by Plaintiff's verified amended complaint. Jones v. Blanas, 393 F. 3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998). Defendants argue in their Reply that Plaintiff offers no evidence but simply rests on factual allegations which are insufficient to show a disputed material fact. (Doc. 61, 4:6-7.) Plaintiff's verified complaint is treated as opposing affidavit to the extent it sets forth admissible facts within Plaintiff's personal knowledge and not based merely on Plaintiff's beliefs, and to which Plaintiff is competent to testify. Johnson, 134 F. 3d at 1399-1400; McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987); Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir. 1985).

|   |   |
|---|---|
|   | would be made into a dough-like substance and crafted into various shapes. He would also use other food products such as banana peels and peach pits, as well as bird feathers found on the yard. To paint his sculptures, he used Kool-Aid or mold from bread. |
| 8. | On May 30, 2005, Plaintiff informed a fellow inmate worker that he would not be at work that day because he had knee pain and was waiting to see the medical staff. |
| 9. | On May 30, 2005, between approximately 8:00 a.m. and 9:00 a.m., Defendant Peterson received a phone call from the Central Kitchen Officer, who was Plaintiff's immediate supervisor, that Plaintiff had failed to report for work in the scullery and had no excused absence or medical lay-in to exempt him from his work assignment. |
| 10. | After receiving the call from Plaintiff's supervisor, Defendant Peterson opened Plaintiff's cell door and asked him why he was not at work. After Plaintiff informed Defendant Peterson that he was not going to work, Plaintiff was told by Defendant Peterson that he was required to go because there was no record showing that he had an excused absence or medical lay-in exempting him from his assignment. |
| 11. | Defendant Peterson then returned to the control booth and called the Central Kitchen Officer to tell him that Plaintiff stated that he would not be attending work. The Central Kitchen Officer stated to Defendant Peterson that Plaintiff was to be confined to his quarters during working hours based on CDCR policies and practices. |
| 12. | After the phone call to the Central Kitchen Officer, Defendant Peterson returned to Plaintiff's cell and informed him that he would not be released to yard or dayroom, and therefore confined to quarters during his regular working hours, because he did not have an excused absence. |
| 13. | Able-bodied inmates are generally required to work. If an inmate fails to report to work and does not have an excused absence, CDCR's practice is to confine an inmate to his living quarters during working hours. This practice is necessary to deter inmates from failing to report to work, as well as to investigate the circumstances surrounding the inmate's absence. If CDCR did not confine inmates to quarters when they were un-excused from a work assignment, staff would be unaware of the inmate's activities and whereabouts, and would |

5

      not be able to perform accurate counts, or otherwise monitor and control inmates' behavior for the purpose of protecting the safety and security of the institution.

14. Approximately mid-morning on May 30, 2005, Defendant Peterson received an inmate grievance from Plaintiff via another inmate, complaining that Defendant Peterson had violated Plaintiff's constitutional rights by confining him to his living quarters.

15. In response to the grievance, Defendant Peterson responded at the informal level that, per Department policy, if an inmate refuses to attend his work assignment, he is required to remain in his cell during normal working hours. Defendant Peterson wrote that Plaintiff' would be released from his cell after his normal working hours to participate in his regular privilege group activities. The grievance was then sent back to Plaintiff for his records.

16. At approximately 2:00 p.m. on May 30, 2005, Defendant Peterson explained to Plaintiff that because working hours were over, he was being released from his cell to participate in his privilege group activities.

17. Plaintiff was subsequently given a Rules Violation Report (RVR) for "Failing to Report," in violation of prison regulations and policies.

18. On May 31, 2005, Plaintiff received a ten day medical lay-in that exempted him from his inmate work assignment, and was found not guilty of his RVR on July 8, 2005.

19. Although Plaintiff was in the A1/A privilege group, on May 30, 2005, his confinement to quarters was punishment for his failure to report to work without an excused absence or medical lay-in exempting him from work.

20. On January 12, 2006, because Plaintiff's yard was on lockdown, staff was performing routine inmate cell searches.

21. Defendant Valles was working with other correctional staff who were conducting the inmate cell searches on January 12, 2006. These cell searches were routinely performed during lockdown because of concern that inmates may have weapons or other contraband in their possession that may be utilized to jeopardize the safety and security of inmates, staff and the institution.

///

22.  Defendant Valles conducted a routine cell search of Plaintiff's cell on January 12, 2006. During this cell search, Defendant Valles confiscated two objects that appeared to be some type of sculpture. The first object was approximately one foot long and rectangular in shape. It had a green-tinged color, similar to molded bread. The second object was similar in size and also had a green-tinged color similar to molded bread.

23.  Inmates often hide weapons or contraband in various places, including objects such as statues.

24.  Defendant Valles disassembled and destroyed the statues to verify that no weapons or weapon stock were stored inside of the two objects that could be used to threaten staff or inmate safety, or that the objects themselves could not be used as weapons.

25.  Correctional officers are required by prison regulations to confiscate items made with food products or state property because these objects are considered contraband. It is a violation of prison regulations to misuse state property, including food, or to otherwise create unsanitary conditions.

26.  California Code of Regulations, Title 15, section 3191 allows an inmate to choose the method of disposition for nonexpendable property, such as tennis shoes, or other similar items. However, food products or other perishable items do not fall under the purview of this regulation. They are not considered nonexpendable property and must be destroyed and discarded.

27.  Defendant Valles destroyed these two objects pursuant to prison regulations because the objects were contraband and appeared to be perishable items that were deemed expendable property.

**D.    Discussion**

   **1.    Defendant Peterson**

In his amended complaint, Plaintiff alleges that Defendant Peterson retaliated against him for filing inmate grievances and lawsuits against other prison officials. (Doc. 15, 4:5-7; 4:27-5:4; 6:3-5.) Plaintiff alleges Defendant Peterson punished him for failing to report to work and confined him to his quarters on May 30, 2005, before Plaintiff was even charged with failing to report to

work. (Doc. 15, 4:13-17; 4:20-27.) Plaintiff alleges that when he asked Defendant Peterson why he was being confined to his quarters, Defendant Peterson told him that it was a "getback for Clark and Williams." (Doc. 15, 4:27-5:1; 6:11-13.) Plaintiff alleges that Defendant Peterson also denied him equal protection when he confined Plaintiff to quarters because he should have been allowed access to the dayroom like other inmates who are also in A1/A privilege group because. (Doc. 15, 7:8-14.)

### a. Retaliation

An allegation of retaliation against a prisoner's First Amendment right is sufficient to support a claim under § 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). The Court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995) (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)). The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

Filing prison grievances and lawsuits is a protected activity, see Rhodes, 408 F.3d at 567, and both parties appear to agree that confining Plaintiff to his quarters was an adverse action. Defendant Peterson argues that he is entitled to judgment as a matter of law because confining Plaintiff to his quarters was not motivated by Plaintiff's action in filing grievances and lawsuits against other prison officials, did not chill Plaintiff's exercise of his First Amendment rights[3], and

---

[3] A necessary element of a retaliation claim is that the defendants' adverse action chilled the plaintiff's exercise of First Amendment rights. Rhodes, 408 F.3d at 567-68. Defendant Peterson argues that Plaintiff's right to exercise his constitutional rights was not chilled by any adverse action taken by Defendant Peterson because Plaintiff was able to continue litigating a lawsuit against another prison official after the May 30, 2005, incident. Plaintiff admits that Defendant Peterson's action did not chill the exercise of his First Amendment rights.
   The Court notes that the proper inquiry is not whether Defendant Peterson's action actually chilled Plaintiff's exercise of his First Amendment rights. "Speech can be chilled even when not completely silenced."

8

served a legitimate penological interest of maintaining institutional order and deterring inmates from failing to report to work and keeping track of the whereabouts of all inmates at all times.

Defendant Peterson attests that he confined Plaintiff to his quarters because Plaintiff failed to report for work on May 30, 2005, without an excused absence or medical lay-in. (UF 9, 10, 11, 12, 13.) Although Plaintiff argues that he had been given an excused absence from work by Sergeant Dorsey on May 30, there is no evidence of this.[4] Rather, the evidence shows that Defendant Peterson was told that Plaintiff failed to report to work without an excused absence and should be confined to his quarters. (UF 9, 11; Doc. 54, 35:16-36:23; 37:6-22; 80:14-81:22.) Plaintiff did receive a medical lay-in, but not until the next day. (UF 18.)

Plaintiff further argues that Defendant Peterson need not have confined him to his quarters in order to monitor him, and could have monitored him outside of his quarters in the dayroom. (Doc. 58, 3:15-19; 9:22-28.) However, maintaining prison order and keeping track of the whereabouts of all inmates are legitimate penological goals. See Procunier v. Martinez, 416 U.S. 396, 412-13 (1974) limited by Thornburgh v. Abbott, 490 U.S. 401 (1989). Plaintiff fails to offer any evidence that Defendant Peterson's action in confining him to quarters did not reasonably advance a legitimate penological goal, and only offers a theory that Defendant Peterson could have monitored him in a way that was less restrictive for Plaintiff. Defendant Peterson was not required to carry out his duties in means least restrictive to Plaintiff. He was merely required to act in reasonable ways to maintain order and keep track of the whereabouts of all inmates at all times. In light of Defendant Peterson's evidence that he confined Plaintiff to his cell for a legitimate reason pursuant to prison regulations and procedures, Plaintiff must submit evidence raising a genuine issue of material fact. See

---

Rhodes, 408 F.3d at 568. "[It] would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity . . . ." Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999). The correct inquiry is to determine whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300). However, the Court need not address this issue as the Court finds that Defendant Peterson is entitled to summary judgment on other grounds.

[4] Plaintiff's opposition is not verified, and may not be treated as an opposing affidavit. Moran v. Selig, 447 F.3d 748, 759-60 (9th Cir. 2006). (Doc. 58.) Although Plaintiff's declaration is signed under penalty of perjury, the declaration merely sets forth a description of Plaintiff's documentary exhibits A through E, and contains no evidentiary facts. (Doc. 57.)

9

1  Matsushita, 475 U.S. at 586.  Although Plaintiff offers Defendant Peterson's statement that confining
2  Plaintiff to his quarters was "a getback for Clark and Williams," Plaintiff has not refuted Defendant
3  Peterson's evidence that Defendant Peterson was following prison regulations and procedures, and
4  acting in furtherance of a legitimate penological goal because he was told by Plaintiff's supervisor
5  that Plaintiff failed to report to work without an excused absence and he was asked to confine
6  Plaintiff to his quarters.  In light of the undisputed facts, Plaintiff's evidence of an alternate
7  explanation behind Defendant Peterson's actions is insufficient to avert summary judgment.  Pratt,
8  65 F.3d at 808

9  In conclusion, Plaintiff has not submitted evidence that Defendant Peterson's action in
10 confining Plaintiff to his quarters did not reasonably advance any legitimate penological goal.  Id.
11 Accordingly, Defendant Peterson is entitled to judgment as a matter of law on Plaintiff's retaliation
12 claim.

### b.     Equal Protection

14 "The Equal Protection Clause . . . is essentially a direction that all persons similarly situated
15 should be treated alike."  City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432 (1985) (citing
16 Plyler v. Doe, 457 U.S. 202, 216 (1982)).   Plaintiff may establish an equal protection claim by
17 showing that similarly situated individuals were intentionally treated differently without a rational
18 relationship to a legitimate state purpose.  Village of Willowbrook v. Olech, 528 U.S. 562, 564
19 (2000); San Antonio School District v. Rodriguez, 411 U.S. 1 (1972); Squaw Valley Development
20 Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir. 2004); SeaRiver Mar. Fin. Holdings, Inc. v. Mineta,
21 309 F.3d 662, 679 (9th Cir. 2002).

22 Defendant Peterson argues that he is entitled to summary judgment as a matter of law on
23 Plaintiff's equal protection claim because Plaintiff was not similarly situated to other A1/A inmates
24 while he was being disciplined for failure to report to work on May 30, 2005, and because Defendant
25 Peterson's action in confining Plaintiff to his quarters was rationally related to advancing prison
26 safety and security.

27 The evidence before the Court is unequivocal that Defendant Peterson confined Plaintiff to
28 his quarters on May 30 because Defendant Peterson believed that Plaintiff had failed to report to

work without an excused absence or a medical lay-in. Thus, Plaintiff was not similarly situated to other A1/A inmates on May 30, because he was being disciplined for failing to report to work. Even assuming arguendo that Plaintiff was situated similarly to other A1/A inmates on May 30, confining Plaintiff to his quarters was rationally related to a legitimate state purpose of maintaining institutional order and keeping track of the whereabouts of all inmates. See Procunier v. Martinez, 416 U.S. 396, 412 (1974), limited by Thornburgh v. Abbott, 490 U.S. 401 (1989). Thus, there was a legitimate basis for denying Plaintiff the use of the dayroom by confining him to his quarters on May 30, 2005.

Plaintiff also argues that Defendant Peterson violated his right to equal protection because he did not have the authority to discipline Plaintiff. Such argument is irrelevant. Plaintiff has failed to meet his burden of demonstrating the existence of material factual dispute, thus the Court finds that Defendant Peterson is entitled to judgment as a matter of law on the equal protection claim.

**2.    Defendant Valles**

Plaintiff alleges that Defendant Valles also retaliated against him for filing inmate grievances and lawsuits against other prison officials on January 12, 2006. (Doc. 15, 32:5-7; 34:14-15.) On January 12, Planitiff's yard was on lockdown and prison staff had been ordered to search every cell in the building. (Doc. 15, 32:7-10.) Defendant Valles searched Plaintiff's cell. (Doc. 15, 32:17; 33:14-15.) Plaintiff alleges that Defendant Valles stated that he "couldn't wait" to search Plaintiff's cell after lunch, as he looked Plaintiff in the eyes before searching his cell. (Doc. 15, 32:25-27; 35:8-10.) Plaintiff alleges that Defendant Valles destroyed two statues while searching his cell. (Doc. 15, 33:18-20.) Plaintiff asked Defendant Valles to give him a property slip for his statues, and Defendant Valles refused. (Doc. 15, 33:20-27.) Plaintiff alleges that his neighbor was offered an opportunity to mail his tennis shoes home and he should have been given the same opportunity to mail his property elsewhere. (Doc. 15, 33:18-25.) Plaintiff alleges that Defendant Valles denied Plaintiff's right to equal protection when he discarded the statues instead of offering Plaintiff an opportunity to mail his statues elsewhere. (Doc. 15, 33:18-25.)

///

///

        **a.**        **Retaliation**

Filing prison grievances and bring lawsuits is a protected activity, see Rhodes, 408 F.3d at 567, and both parties appear to agree that confiscating and destroying property was an adverse action. Defendant Valles argues that he is entitled to judgment as a matter of law because confiscating and destroying two objects from Plaintiff's cell during a lockdown cell search on January 12, 2006, was not motivated by Plaintiff's action in filing grievances and lawsuits against other prison officials, did not chill Plaintiff's exercise of his First Amendment rights[5], and served a legitimate penological interest of maintaining institutional safety and security.

Defendant Valles searched Plaintiff's cell, and confiscated two objects that appeared to be some type of sculpture, made from molded bread. (UF 22.) Defendant Valles destroyed these items to verify that no weapons or weapon stock were hidden inside of these objects, or that the objects themselves could be used as weapons. (UF 24.) Correctional officers are also required to confiscate items made with food items or state property because these objects are considered contraband. (UF 25.) California Code of Regulations, Title 15, section 3191 allows an inmate to choose the method of disposition for nonexpendable property, such as tennis shoes, but food products or other perishable items do not fall under the purview of this regulation and must be destroyed and discarded. (UF 26.) Defendant Valles destroyed these objects pursuant to prison regulations because the objects were contraband and appeared to be perishable items that were deemed expendable propery. (UF 27.) Defendant Valles argues that confiscating and destroying contraband objects was to maintain institutional security and safety, which is a legitimate peonological goal. See Procunier v. Martinez, 416 U.S. 396, 412 (1974), limited by Thornburgh v. Abbott, 490 U.S. 401 (1989).

Defendant Valles submitted evidence that his actions served a legitimate penological goal, thus the burden shifts to Plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita, 475 U.S. at 586. Plaintiff bears the burden of proving "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

---

[5] A necessary element of a retaliation claim is that the defendants' adverse action chilled the plaintiff's exercise of First Amendment rights. Rhodes, 408 F.3d at 567-68. Defendant Valles argues that Plaintiff's rights were not chilled by any adverse action taken by Defendant Valles. Plaintiff admits that Defendant Valles' action did not chill his First Amendment rights. See supra FN 3 for a similar discussion regarding the chilling element of a retaliation claim against Defendant Peterson.

Plaintiff offers Defendant Valles' statement that he "couldn't wait" to search Plaintiff's cell, and argues that Valles' action in throwing away Plaintiff's statues "very forcefully" without checking them for weapons evidences an illegitimate motive on Valles' part. (Doc. 15, 32:25-27; 35:8-10; Doc. 58, 5:23-27.) The undisputed facts demonstrate that under the governing regulations, the confiscated statues, made from food products, were contraband and were subject to destruction as expendable property. The submission of Defendant Valles' statement as an alternative motive for the destruction of the statues is insufficient to meet Plaintiff's burden of demonstrating the absence of any legitimate purpose. Pratt, 65 F.3d at 808. Accordingly, Defendant Valles is entitled to summary judgment as a matter of law on Plaintiff's retaliation claim.

### b. Equal Protection

Defendant Valles argues that he is entitled to judgment as a matter of law on Plaintiff's equal protection claim because Plaintiff was not similarly situated to other inmates who had nonexpendable property confiscated during the lockdown cell search, and because Defendant Valles' actions were rationally related to advancing prison safety and security. Plaintiff submits no evidence to the contrary.

Plaintiff's statues made from bread were not nonexpendable property that fell under the purview of Title 15 section 3191 of the California Code of Regulations. Thus, the Court finds that Plaintiff was not similarly situated to other inmates who had their nonexpendable property confiscated. Further, even assuming that Plaintiff was similarly situated to other inmates with nonexpendable property, Defendant Valles' action in confiscating and destroying the objects was rationally related to furthering prison safety, security and the public heath of prison officials and other inmates.

Plaintiff has failed to offer any evidence showing that Defendant Valles' actions was not rationally related to a legitimate penological purpose. Plaintiff fails to establish a genuine issue of material factual dispute, thus the Court finds that Defendant Valles is entitled to judgment as a matter of law on the equal protection claim.

///

///

### 3. Qualified Immunity

Defendants argue that they are entitled to judgment as a matter of law because even if Defendants violated Plaintiff's constitutional rights, the right violated was not clearly established. The Court need not address this issue as Defendants are entitled to judgment as a matter of law on the merits of Plaintiff's claims against them.

### E. Conclusion and Recommendation

Based on the foregoing, it is HEREBY RECOMMENDED that Defendants Peterson and Valles' motion for summary judgment, filed January 5, 2009, be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **twenty (20) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:   **August 27, 2009**             /s/ Gary S. Austin
                                  UNITED STATES MAGISTRATE JUDGE